2023 IL App (3d) 220024

Opinion filed October 27, 2023

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-22-0024 Circuit No. 18-CF-2506 |
| STEPHAN J. FILIPIAK, | ) ) ) | Honorable Michael W. Reidy, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE BRENNAN delivered the judgment of the court, with opinion.
Justices McDade and Albrecht concurred in the judgment and opinion.

**OPINION**

¶ 1        Defendant, Stephan J. Filipiak, appeals from his convictions for predatory criminal sexual assault of a child against two child victims. Defendant argues initially that his conviction as to one of the victims must be reversed because he was denied his right to a unanimous verdict where the indictments, jury instructions, and verdict forms failed to differentiate between the two counts that related to that same victim, rendering it impossible to ascertain on which of the two offenses the jury acquitted defendant. Arguing that double jeopardy then precludes retrial as to these unanimity of verdict counts, defendant asks that we vacate the unauthorized sentence of mandatory natural

life as to the unrelated victim's count and remand for resentencing. We reverse in part, vacate in part, and remand for resentencing.

¶ 2                                    I. BACKGROUND

¶ 3        Defendant was charged with three counts of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2018)) for acts alleged to have been committed on October 6, 2018, during a sleepover at defendant's house. Counts I and III were alleged to have been committed against Br.G., and count II was alleged to have been committed against Br.G.'s sister, Be.G. Counts I and III were charged identically, except count III stated it was "a different act than alleged in Count [I]."

¶ 4        The case proceeded to a jury trial on October 5, 2021. Br.G.'s videotaped victim sensitive interview from October 17, 2018, was admitted at trial pursuant to section 115-10 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-10 (West 2020)). During the interview, Br.G. was asked if she knew why she was being interviewed. Br.G. pointed to her pelvis, indicating that defendant had touched her there. Br.G. explained how, on the night of the sleepover, she was sleeping on the couch when defendant woke her, placed his finger under her shirt, and touched inside her vagina. She was not wearing any underwear at the time. She also stated that, before the couch incident, she took a shower with defendant's assistance and defendant also digitally penetrated her vagina.

¶ 5        The parties stipulated that during a subsequent recorded interview on August 5, 2021, Br.G. stated that defendant did not enter the shower and did not touch her on the couch.

¶ 6        At the time of her trial testimony, Br.G. was eight years old. She testified at trial that during a sleepover at defendant's home, she was changing in the bedroom after showering when defendant entered the room and digitally penetrated her vagina. Later that night, Br.G. fell asleep on a couch

2

and was awakened by defendant and digitally penetrated again. Br.G. further testified she did not remember recanting her statements during the August 5, 2021, interview.

¶ 7    Be.G. was 10 years old at the time of trial and testified that defendant digitally penetrated her in the shower the night of the sleepover.

¶ 8    Defendant testified that he did wake Br.G. to take a shower but did not inappropriately touch her. Br.G. and Be.G. were showering together when defendant realized they did not have clean clothes or towels. Defendant entered the bathroom with permission from their father. When he entered, he noticed the children were not standing under the water spray, so he pointed the showerhead to spray them before leaving. After they finished their shower, they went to watch television in the bedroom. Eventually, Br.G. returned to the living room, and defendant went to his bedroom. Defendant testified that he did not touch either Br.G. or Be.G. inappropriately.

¶ 9    The jury was given forms for all three counts, indicating that it could find defendant guilty or not guilty of predatory criminal sexual assault of a child. The verdict form for count I stated, "finger in vagina-1-[Br.G.]," and the verdict form for count III stated, "finger in vagina-2-[Br.G.]." No jury instructions were given as to the difference between the two counts, and the jury was not instructed that they needed to be unanimous as to specific conduct for each count. The State referred to the alleged post-shower and couch conduct in its closing argument but did not clarify which count related to which conduct. The jury found defendant guilty as to counts I and II but not guilty as to count III.

¶ 10    Defendant filed several posttrial motions, including a motion to vacate the finding of guilt notwithstanding the verdict, but did not specifically raise an unanimity of verdict argument. The court denied the posttrial motions and sentenced defendant to natural life in prison, pursuant to section 11.1.40(b)(1.2) of the Criminal Code of 2012 (720 ILCS 5/11-1.40(b)(1.2) (West 2014)

3

(mandating natural life sentence where defendant convicted of predatory criminal sexual assault of two or more persons)). Defendant's motion to reconsider the sentence was denied.

¶ 11                                    II. ANALYSIS

¶ 12        On appeal, defendant argues he was denied his right to a unanimous jury verdict. Specifically, defendant contends that, because the State failed to adequately distinguish between counts I and III, his acquittal on count III makes it impossible to tell if the jury unanimously convicted him of specific conduct. Defendant acknowledges that he did not preserve this issue for appeal and asks that we review the matter pursuant to the plain error doctrine. "[T]he plain-error doctrine bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved error when either (1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence." *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005). It is necessary to determine first whether the verdict forms created a jury unanimity issue, as there can be no plain error if there is no error. See *People v. Johnson*, 218 Ill. 2d 125, 139, 141-42 (2005).

¶ 13        "The test of the sufficiency of a verdict is whether the jury's intention can be ascertained with reasonable certainty from the language used." *People v. Mack*, 167 Ill. 2d 525, 537 (1995). "In determining the meaning of a verdict, all parts of the record will be searched and interpreted together." *People v. Caffey*, 205 Ill. 2d 52, 121 (2001). The parties have not provided us with, and we are not aware of, any controlling case law directly addressing this situation. However, we find *People v. Smith*, 233 Ill. 2d 1 (2009), *People v. Scott*, 243 Ill. App. 3d 167 (1993), and cases from other jurisdictions instructive.

¶ 14        In *Scott*, defendant was charged with three counts of delivering a controlled substance to three different undercover officers at separate times, but only a single verdict form was presented

4

to the jury. *Scott*, 243 Ill. App. 3d at 168-69. The court determined this was error because it was possible

> "that only four jurors believed that defendant was guilty of delivering a controlled substance to one of the officers, four other jurors believed that defendant was guilty of delivering a controlled substance to another officer and the remaining four jurors believed that defendant was guilty of delivering a controlled substance to the third officer." *Id.* at 169.

That possibility permitted "a unanimous guilty verdict to have been rendered without all 12 jurors agreeing that defendant delivered a controlled substance to a particular recipient as set forth in each count of the indictment." *Id.*

¶ 15          In *Smith*, a general verdict form was provided to the jury, allowing them to find defendants guilty of murder if they found any one of the theories alleged in the indictment, which included intentional, knowing, and felony murder. *Smith*, 233 Ill. 2d at 26-27. The court concluded that

> "where *** it is impossible to tell from the general verdict whether defendant was actually convicted on *each* count in the indictment, it is error for the trial courts to make that presumption. Therefore, *** because defendants were sentenced based on the *presumption* that they were found guilty of intentional murder, defendants were prejudiced ***." (Emphases in original.) *Id.* at 27.

¶ 16          Here, we cannot reasonably ascertain the jury's intention from the verdicts and record. Defendant was indicted for two counts of predatory criminal sexual assault of a child as to Br.G. The indictments alleged identical acts of sexual penetration, describing them as follows. Count I alleged that defendant "placed his finger in the vagina of [Br.G]." Count III alleged that defendant "placed his finger in the vagina of [Br.G], said act being a different act than alleged in Count [I]."

5

At trial, the State presented evidence that defendant digitally penetrated Br.G twice on the evening of October 6, 2018: once proximate to taking a shower, and once while on the couch. Two sets of identical verdicts forms were submitted to the jury pertaining to the predatory criminal sexual assault charges for Br.G., which were not differentiated, except with parentheticals indicating ("1") and ("2"). Nor did the State in any way suggest to the jury at closing which of the verdict forms pertained to which of the alleged acts of penetration. We are therefore incapable of ascertaining with reasonable certainty whether the jury intended to convict defendant of the shower conduct while acquitting him of the couch conduct or vice versa. See *Mack*, 167 Ill. 2d at 537. Indeed, just as with the concern raised in *Scott*, the jury could have rendered a guilty verdict without actual unanimity.

¶ 17       The State does not argue on appeal that the record somehow informs which of the verdict forms apply to the specific acts testified to at trial. Instead, the State argues that the jury presumably understood that each verdict was for a specific offense and knew they needed to be unanimous in rendering a verdict as to a specific offense. We reject this argument for the reasons outlined above and, in addition, note that here the jury was not instructed that it needed to be unanimous as to specific conduct. See, *e.g.*, *Harp v. Commonwealth*, 266 S.W.3d 813, 818 (Ky. 2008) (" '[W]hen the evidence is sufficient to support multiple counts of the same offense, the jury instructions must be tailored to the testimony in order to differentiate each count from the others.' " (quoting *Bell v. Commonwealth*, 245 S.W.3d 738, 744 (Ky. 2008))). Moreover, while the State correctly observes that general verdict forms are permitted and do not require the jury to agree upon a specific incident to sustain a conviction, general verdict forms were not submitted to the jury here. The State cannot submit multiple nongeneral verdict forms, exposing defendant to increased criminal liability, and then claim the jury was not required to agree upon a specific act to sustain the conviction. See,

6

*e.g.*, *State v. Marcum*, 480 N.W.2d 545, 552 (Wis. Ct. App. 1992) ("Having charged three separate acts, [the State] was bound to prove *** each charge. It could not use the volitional act of one charge as an alternative means for a guilty verdict on another charge.").

¶ 18    To avoid the unanimity issue here, the State could have specified in the verdict forms which count related to which specific conduct, *e.g.*, ("couch") and ("shower"). The failure to somehow distinguish the two charges for the jury's deliberation, however, makes it impossible to reasonably ascertain whether the jury unanimously decided whether either offense was committed by defendant.

¶ 19    As indicated previously, though the jury unanimity issue was not preserved, the plain-error doctrine bypasses normal forfeiture principles when either (1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence. *Herron*, 215 Ill. 2d at 186-87. An error under the second prong of the plain error doctrine has been equated with structural error or a "systemic error which serves to 'erode the integrity of the judicial process and undermine the fairness of the defendant's trial.' " *People v. Glasper*, 234 Ill. 2d 173, 197-98 (2009) (quoting *Herron*, 215 Ill. 2d at 186). "[T]he right to a unanimous verdict is among the most fundamental of rights in Illinois." *People v. McGhee*, 2012 IL App (1st) 093404, ¶ 24. "[A] verdict lacking juror unanimity is 'structural error subject to automatic reversal.' " *People v. Jackson*, 2022 IL 127256, ¶ 47 (quoting *People v. Thompson*, 238 Ill. 2d 598, 610 (2010)).

¶ 20    The parties agree that our holding on the unanimity issue necessitates the reversal of defendant's conviction on count I and remand of the cause for resentencing as to count II. Double jeopardy precludes the State from retrying either count I or III. The double jeopardy clause of the fifth amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const., amend. V; see also Ill. Const. 1970, art. I, § 10. "The

7

prohibition against double jeopardy 'protects against three distinct abuses: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense.' " *People v. Henry*, 204 Ill. 2d 267, 283 (2003) (quoting *People v. Placek*, 184 Ill. 2d 370, 376-77 (1998)). "[T]he law attaches particular significance to an acquittal." *United States v. Scott*, 437 U.S. 82, 91 (1978). Because defendant was tried and acquitted on count III under circumstances where we cannot ascertain which offense the acquittal pertains to, retrying defendant for either offense would violate the double jeopardy clause.

¶ 21                                                    III. CONCLUSION

¶ 22          The judgment of the circuit court of Du Page County as to count I is reversed; the sentence as to count II is vacated and remanded for resentencing.

¶ 23          Reversed in part, vacated in part, and remanded.

*People v. Filipiak*, 2023 IL App (3d) 220024

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Du Page County, No. 18-CF-2506; the Hon. Michael W. Reidy, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Santiago A. Durango, Thomas A. Karalis, and Amber Hopkins, of State Appellate Defender's Office, of Ottawa, for appellant. |
| **Attorneys for Appellee:** | Robert B. Berlin, State's Attorney, of Wheaton (Lisa Anne Hoffman and Kristin M. Schwind, Assistant State's Attorneys, of counsel), for the People. |