*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0975**

State of Minnesota,
Respondent,

vs.

Steven Henrey Gonzales,
Appellant.

**Filed June 13, 2016
Affirmed in part, reversed in part, and remanded
Halbrooks, Judge**

Polk County District Court
File No. 60-CR-14-2064

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Greg Widseth, Polk County Attorney, Scott A. Buhler, Assistant County Attorney, Crookston, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Suzanne M. Senecal-Hill, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Halbrooks, Presiding Judge; Hooten, Judge; and Jesson, Judge.

**U N P U B L I S H E D  O P I N I O N**

**HALBROOKS**, Judge

After a jury trial, appellant challenges both his conviction and sentence for first-degree burglary, arguing that the district court erred by failing to give a specific unanimity

instruction and abused its discretion by imposing a sentence with an upward durational departure. He also challenges the imposition of sentences for two of three offenses to which he pleaded guilty before trial, arguing that his convictions arose from a single behavioral incident. We affirm in part, reverse in part, and remand.

**FACTS**

On November 6, 2014, police were called to a grocery store after appellant Steven Gonzales offered a forged check as payment. Gonzales gave the responding officer a false name and then fled in a vehicle, reaching speeds of 80 to 90 miles per hour, driving through a strip of grass, and ignoring at least one stop sign. After about ten miles, Gonzales drove into a farm field, stopped the car, and ran toward a house.

A.A., who was home at the time with her seven-year-old son, K.A., heard car engines and sirens approaching and went to the kitchen window with her son to look out. She saw a man whom she did not know running toward her house, and she realized that her garage door was open. A.A. ran to the door that connects the kitchen to the garage and was able to shut and lock it despite Gonzales pushing on it from the other side. K.A. was in the kitchen at the time. A.A. then ran to the patio door, locked it, and took K.A. upstairs to his bedroom, where she closed and barricaded the door. Just then, A.A. heard a crash that sounded like glass breaking. After speaking to the responding police officer through a window, A.A. helped K.A. climb through the window and onto the roof, and the police officer helped the two to the ground. A.A. testified that K.A. was frightened.

Police officers suspected that Gonzales was in the basement, which had two access points—a second door leading from the garage and a window. A.A. testified that the

2

window had been intact earlier that day. Officers testified that, when they approached, the basement door was locked and the window was broken. Gonzales testified that the officers, not he, broke it and then sprayed pepper spray into the basement. After hours had passed and pepper spray and attempted negotiations failed to persuade Gonzales to come out, the officers kicked in the basement door, knocked down a barricade, and found Gonzales sitting on top of a freezer smoking a cigarette.

The state charged Gonzales with (1) first-degree burglary of an occupied dwelling, (2) fleeing a peace officer in a motor vehicle, (3) offering a forged check, and (4) providing false information to a peace officer. Gonzales pleaded guilty to all but first-degree burglary, which was tried to a jury. The jury returned a guilty verdict, and the district court convicted Gonzales and imposed concurrent sentences on all four offenses. This appeal follows.

## DECISION

### I.

Gonzales argues that the district court erred by not giving a specific unanimity instruction.[1] To prove first-degree burglary, the state had to show that Gonzales "enter[ed] a building without consent and with intent to commit a crime, *or* enter[ed] a building without consent and commit[ted] a crime while in the building." Minn. Stat. § 609.582, subd. 1 (2014) (emphasis added). Gonzales argues that because members of the jury could

---

[1] The district court gave the jury a standard unanimity instruction: "In order for you to return a verdict, whether guilty or not guilty, each juror must agree with that verdict. Your verdict must be unanimous."

have disagreed on whether he entered the home with *intent to commit* a crime (fleeing the police) or entered the home and *committed* a crime inside (breaking the window), his right to a unanimous verdict was violated.

Because Gonzales did not object to the district court's instructions or request that an instruction be added, we review for plain error. *State v. Matthews*, 779 N.W.2d 543, 548 (Minn. 2010). "Under the plain-error test, an appellant must show that there was (1) an error, (2) that is plain, and (3) the error must affect substantial rights." *Id.* "An error is plain if it is clear and obvious; usually this means an error that violates or contradicts case law, a rule, or an applicable standard of conduct." *Id.* at 549. Only if all three prongs of the test are met do we then consider whether to "address the error to ensure fairness and the integrity of the judicial proceedings." *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998).

Jury verdicts in all criminal cases must be unanimous. Minn. R. Crim. P. 26.01, subd. 1(5). "To achieve that end, a jury must unanimously find that the government has proved each element of the offense." *State v. Pendleton*, 725 N.W.2d 717, 730-31 (Minn. 2007). When the state presents evidence of separate and distinct culpable acts, a specific unanimity instruction is required. *State v. Stempf*, 627 N.W.2d 352, 358-59 (Minn. App. 2001).

Here, the state's theory was that Gonzales entered A.A.'s home with the intent to flee from police, or in the alternative, that, once inside, Gonzales committed the crime of criminal damage to property by breaking the basement window. In *State v. Infante*, we held that a specific unanimity instruction is unnecessary if the two acts that would support

4

a conviction occurred at the same place, involved the same victim, and took place over a short period of time. 796 N.W.2d 349, 357 (Minn. App. 2011). In other words, if the acts are part of a single behavioral incident, then a specific unanimity instruction is unnecessary. *Id.* at 356-57. In *Infante*, because the two acts supporting an assault charge occurred at the same cabin, involved a single victim, and were separated by a span of two to three hours, we concluded that they were part of a single behavioral incident. *Id.* at 352, 357. Here, A.A. testified that the window was broken within minutes of Gonzales's flight into the home. Because the acts occurred at the same place, involved the same victims, and took place within a short period of time, we conclude that the acts of fleeing into the home and breaking the window were part of a single behavioral incident.

In *Infante*, we also concluded that "if the statute establishes *alternative means* for satisfying an element, unanimity on the *means* is not required." *Id.* at 355 (quotation omitted). We distinguished different means of proving an element from different instances that would satisfy an element. *Id.* at 357-58. In *Richardson v. United States*, the Supreme Court explained:

> Where, for example, an element of robbery is force or the threat of force, some jurors might conclude that the defendant used a knife to create the threat; others might conclude he used a gun. But that disagreement—a disagreement about means—would not matter as long as all 12 jurors unanimously concluded that the Government had proved the necessary related element, namely, that the defendant had threatened force.

526 U.S. 813, 817, 119 S. Ct. 1707, 1710 (1999). As in *Infante* and *Richardson*, the two acts here—intent to commit a crime and actually committing a crime—were alternative means of proving an element of burglary, and juror unanimity is not required.

5

Gonzales argues that this case is more like *State v. Stempf*, in which the state charged the defendant with one count of possession of a controlled substance but then argued two entirely distinct and separate instances of possession. 627 N.W.2d at 357. In *Stempf*, the state urged the jury to convict based on evidence that methamphetamine was found at the defendant's place of work or in his truck, asserting that they need not agree on which act was proved. *Id.* at 354, 358. We reversed, determining that the two acts lacked "unity of time and place; they [were] separate and distinct culpable acts, either one of which could support a conviction." *Id.* at 358-59. Thus, the district court should have instructed the jury on specific unanimity. *Id.* at 359.

Here, the two acts shared unity of time and place. The jury did not need to select from distinct sets of factual allegations, each with a separate defense. Because entering with intent to commit a crime and entering *and* committing a crime are different means of committing a single element, the instructions given fairly and adequately explained the law of the case. The district court did not plainly err by not giving a specific unanimity instruction.

## II.

Gonzales argues that the district court abused its discretion by departing from the presumptive sentence of 39 months and imposing a 60-month sentence based on the jury's finding that he committed first-degree burglary in the presence of a child. A district court must impose the presumptive sentence unless there are "identifiable, substantial, and compelling circumstances" to warrant a departure. Minn. Sent. Guidelines 2.D.1 (2014). "Substantial and compelling circumstances are those showing that the defendant's conduct

6

was significantly more or less serious than that typically involved in the commission of the offense in question." *State v. Edwards*, 774 N.W.2d 596, 601 (Minn. 2009) (quotation omitted). The decision to depart from a presumptive sentence is within the district court's discretion. *State v. Robideau*, 796 N.W.2d 147, 150 (Minn. 2011). We will reverse only if the district court's reasons for departure are improper or inadequate and there is insufficient evidence on which to base a departure. *State v. Vance*, 765 N.W.2d 390, 395 (Minn. 2009).

Committing an offense "in the presence of a child" is an aggravating factor justifying a departure from the presumptive sentence. Minn. Stat. § 244.10, subd. 5a(a)(13) (2014); Minn. Sent. Guidelines 2.D.3.b.(13) (2014). A defendant commits a crime "in the presence" of a child if the child "saw, heard, or otherwise witnessed the offense," *Vance*, 765 N.W.2d at 394, or "some portion of the commission of the offense in question," *Robideau*, 796 N.W.2d at 152. "The mere presence of children in the home, absent any evidence that they saw or heard the offense, is not a substantial and compelling circumstance demonstrating that a defendant's conduct was significantly more serious than that typically involved in the commission of the offense." *Vance*, 765 N.W.2d at 394.

Gonzales argues that the state failed to prove that K.A. saw, heard, or otherwise witnessed the burglary, in part because K.A. did not testify at trial. We reject the argument that the testimony of a seven-year old is required to prove that the crime was committed in his presence. A.A. testified that K.A. was with her when she looked out the window and saw Gonzales running toward the house. K.A. was in the kitchen when A.A. blocked Gonzales from entering the house and with A.A. when she secured the patio door. A.A.

7

and K.A. were together when A.A. barricaded the bedroom door and heard the crash of breaking glass below. K.A. was forced to climb through a window and onto the roof to evacuate the house. According to A.A.'s testimony, K.A. was very quiet, understood that something was not right, and was frightened. The record amply supports a finding that K.A. saw, heard, or otherwise witnessed some portion of the burglary.

Gonzales also argues that K.A.'s presence satisfied an element of first-degree burglary and therefore K.A.'s presence cannot be the basis for an upward departure from the presumptive sentence. "The district court may not base an upward departure on facts necessary to prove elements of the offense being sentenced." *Edwards*, 774 N.W.2d at 602. But first-degree burglary only requires the presence of one non-accomplice in the dwelling, which was satisfied by A.A. Minn. Stat. § 609.582, subd. 1(a). The elements of first-degree burglary do not contemplate the ages of any occupants or require that a child be present. *See id.*, subd. 1. In *Johnson v. State*, we concluded that a burglary offense was committed against the parent who was home at the time and that the presence of children provided a basis for departure from the presumptive sentence. 393 N.W.2d 376, 378 (Minn. App. 1986), *review denied* (Minn. Nov. 17, 1986). The same reasoning applies here. The presence of a child is a proper basis for departure under these circumstances.

Gonzales also argues that his conduct was not significantly more serious than a typical burglary. The district court found that "fleeing into the home and forcing the evacuation of the child does make it more serious." We agree. On this record, we conclude that the district court acted within its discretion by imposing an upward departure from the presumptive sentence based on the presence of a child.

8

**III.**

Gonzales argues that the district court erred by imposing sentences for his convictions of offering a forged check and providing a false name to a peace officer because the conduct underlying those offenses was part of a single behavioral incident that included fleeing into A.A.'s basement. Under Minn. Stat. § 609.035, subd. 1 (2014), subject to certain exceptions, "if a person's conduct constitutes more than one offense under the laws of this state, the person may be punished for only one of the offenses and a conviction or acquittal of any one of them is a bar to prosecution for any other of them." Whether a defendant's offenses occurred as part of a single course of conduct, or single behavioral incident, is a mixed question of law and fact. *State v. Jones*, 848 N.W.2d 528, 531 n.1, 533 (Minn. 2014) (using "single course of conduct" and "single behavioral incident" interchangeably in construing Minn. Stat. § 609.035, subd. 1). We review the district court's findings of fact under the clearly erroneous standard and its application of the law de novo. *Id.* at 533. Whether multiple offenses occurred during a single behavioral incident depends on the facts and circumstances. *Id.* "Offenses are part of a single [behavioral incident] if the offenses occurred at substantially the same time and place and were motivated by a single criminal objective." *Id.*

"[C]riminal conduct committed to avoid apprehension for another offense is generally considered part of the same behavioral incident." *State v. Barnes*, 618 N.W.2d 805, 813 (Minn. App. 2000), *review denied* (Minn. Jan. 16, 2001). Here, Gonzales gave a false name after he was confronted by police in the grocery store parking lot about offering a forged check. Because Gonzales gave the false name to avoid apprehension, he cannot

9

be sentenced for both offering a forged check and providing a false name to a peace officer. But because of an express statutory exception, the same reasoning does not preclude the imposition of a sentence for fleeing a peace officer. A conviction under Minn. Stat. § 609.487, subd. 3 (2014), which prohibits fleeing a peace officer by means of a motor vehicle, "is not a bar to conviction of or punishment for any other crime committed by the defendant as part of the same conduct." Minn. Stat. § 609.035, subd. 5 (2014).

Gonzales also argues that he cannot be sentenced for both first-degree burglary and offering a forged check because he entered A.A.'s basement to avoid apprehension for the forged check. We disagree. A judicially created exception to the single-behavioral-incident rule permits the imposition of multiple sentences when there are multiple victims. *State v. Ferguson*, 808 N.W.2d 586, 589 (Minn. 2012) ("[T]he legislature did not intend section 609.035 to immunize offenders in every case from the consequences of separate crimes intentionally committed in a single episode against more than one individual." (quotation omitted)). Here, the burglary took place ten miles from the grocery store and the victims of the two offenses were entirely separate.

The district court properly sentenced Gonzales for first-degree burglary, offering a forged check, and fleeing a peace officer in a motor vehicle. We therefore affirm those sentences. But we reverse the sentence imposed for providing a false name to a peace officer and remand to the district court with instructions to vacate that sentence.

**Affirmed in part, reversed in part, and remanded.**

10